**[Not Yet Scheduled for Argument]**
**No. 12-1040**

---

IN THE
United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

KHADIJA DUMA,

*Appellant*,

**v.**

COMMISSIONER OF INTERNAL REVENUE SERVICE,

*Appellee.*

---

**APPEAL FROM THE UNITED STATES TAX COURT, NO. 11042-07**

---

**REPLY BRIEF OF COURT-APPOINTED AMICUS CURIAE
IN SUPPORT OF APPELLANT**

David W. DeBruin
Jessica Ring Amunson
Caroline D. Lopez
Rochelle P. Lundy
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC  20001
(202) 639-6000
ddebruin@jenner.com
jamunson@jenner.com
clopez@jenner.com
rlundy@jenner.com

Date:   March 1, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ...................................................................................................... 3

I.      THE COURT HAS JURISDICTION TO HEAR MS. DUMA'S
        PRO SE APPEAL, WHICH RIPENED ON ENTRY OF FINAL
        JUDGMENT. ........................................................................................... 3

        A.      The Government Does Not Acknowledge the Jurisdictional
                Difference Between Premature Notices of Appeal and Late-
                Filed Notices of Appeal ................................................................. 3

        B.      The Government Fails to Address Amicus's Argument that
                Premature Notices of Appeal Under Rule 13 Should be
                Permitted to Ripen Just as They Did Under the Analogous Pre-
                Amendment Appellate Rule 4. ...................................................... 4

        B.      Nor Did the Government Show That Allowing Ms. Duma's
                Premature Notice Of Appeal to Ripen Is Inconsistent With
                *FirsTier*'s Reasonableness Test, Particularly In Light Of Her
                Pro Se Status. ................................................................................. 8

                1)      Ms. Duma Is Precisely The Type of "Unskilled Litigant"
                        Whom *FirsTier* Protects. ................................................. 9

                2)      The Decision At Issue Here Is Not The Type Of Interlocutory
                        Order Contemplated By *FirsTier* Because The Tax Court's
                        Determination of Liability Functions As The Operative
                        Decision And Leaves Only A Ministerial Computation Before
                        Entry Of Judgment. .......................................................... 13

                3)      Nor Would Permitting Ms. Duma's Notice of Appeal To Ripen
                        Prejudice the Government under *FirsTier*. ..................... 16

II.     THE TAX COURT FAILED TO CONSIDER WHETHER MS.
        DUMA'S DISABILITY EXCUSES HER LIABILITY FOR TAX
        PENALTIES. ........................................................................................18

        A.     The Tax Court Never Determined Whether Ms. Duma's
               Disability Provided Reasonable Cause for Her Failure to
               Timely File and Pay. .........................................................18

        B.     The Tax Court Misstated the Applicable Law in Penalizing Ms.
               Duma for Her Failure to Pay Estimated Tax......................21

CONCLUSION ......................................................................................24

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES[*]

**CASES**

*Adams v. Commissioner*, 105 T.C.M. (CCH) 1029, 2013 WL 135103 (2013).......23

*Angellino v. Royal Family Al-Saud*, 688 F.3d 771 (D.C. Cir. 2012), *cert. denied*, 133 S. Ct. 851 (2013) ............................................................................10

*Arizona v. California*, 460 U.S. 605 (1983)..............................................................17

*Bowles v. Russell*, 551 U.S. 205 (2007).....................................................................3

*Cahill v. Commissioner*, 102 T.C.M. (CCH) 187, 2011 WL 3625106 (2011)........23

*Capital Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217 (D.C. Cir. 2011) ..................................................................................................16

*Cordle v. Guarino*, 428 F.3d 46 (1st Cir. 2005) .......................................................11

*Firchau v. Diamond National Corp.*, 345 F.2d 269 (9th Cir. 1965) ........................7

*FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, 498 U.S. 269 (1991)........................................................................... 8, 9-10, 14, 15, 17

*Flynn v. Ohio Building Restoration, Inc.*, 162 F. App'x 3 (D.C. Cir. 2005)...........15

*Foman v. Davis*, 371 U.S. 178 (1962) .......................................................................7

*Geboy v. Brigano*, 489 F.3d 752 (6th Cir. 2007) .....................................................11

*Hamilton v. United States*, 140 F.2d 679 (D.C. Cir. 1944) ......................................7

*Holland v. Williams Mountain Coal Co.*, No. 04-7092, 2004 WL 2713122 (D.C. Cir. Nov. 23, 2004) ...................................................................................15

*Houston v. Lack*, 487 U.S. 266 (1988)......................................................................3

*In re Jack Raley Construction, Inc.*, 17 F.3d 291 (9th Cir. 1994) ...........................11

*Lemke v. United States*, 346 U.S. 325 (1953).......................................................7, 17

---

[*] Authorities upon which we chiefly rely are marked with asterisk.

iii

*McLaine v. Commissioner*, 138 T.C. 10 (2012)......................................................22

*Mendes v. Commissioner*, 121 T.C. 308 (2003) .....................................................23

*Meyer v. Commissioner*, 85 T.C.M. (CCH) 760, 2003 WL 118258 (2003)............24

*Robinson-Reeder v. American Council on Education*, 571 F.3d 1333 (D.C. Cir. 2009) ...........................................................................................................10

*Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006) ..................................................17

*Taylor v. Commissioner*, 771 F.2d 478 (11th Cir. 1985).........................................12

*Together Development Corp. v. A Better Choice Ltd.*, 95 F.3d 1158 (9th Cir. 1996) (unpublished table decision).....................................................................11

*Williams v. Washington Convention Center Authority*, 481 F.3d 856 (D.C. Cir. 2007) ...........................................................................................................11

## STATUTES

26 U.S.C. § 6651 ....................................................................................................19

26 U.S.C. § 6654 ....................................................................................................21

## OTHER AUTHORITIES

D.C. Cir. R. 36 .......................................................................................................15

*Fed. R. App. P. 4 (1978) ........................................................................................6

*Fed. R. App. P. 13 .................................................................................................6

Fed. R. App. P. 14 (1997) .......................................................................................5

Fed. R. App. P. 14 (2013) .......................................................................................5

Fed. R. Civ. P. 1 .....................................................................................................7

Fed. R. Civ. P. 61 ...................................................................................................7

Fed. R. Crim. P. 52..................................................................................................7

Jose Leiman, *Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. 165 (1995) ................................................................................14, 16

Tax Court Rule 1 ........................................................................................7

*Tax Court Rule 155 ...........................................................................13, 14

Tax Court Rule 160 ...................................................................................7

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government's brief fails to address the central premise of amicus's argument.  Instead, the government spends most of its time arguing points on which the government and amicus actually agree.  Amicus takes no issue with the government's argument that the timely filing of a notice of appeal is jurisdictional.  *See* Government Br. 20-25.  Amicus also does not challenge the government's argument that this Court might not have equitable jurisdiction to hear a notice of appeal that was filed *after the time to appeal had expired.  See* Government Br. 23-25.  But that is not the question here.  Rather, this Court must address whether a notice of appeal from the Tax Court's initial decision determining liability that was *filed before the time to appeal had begun* can nonetheless be considered a timely filing because it ripened upon entry of judgment.  *See* Amicus Br. 21-40.  None of the cases cited by the government addresses this question – which is one of first impression for this Court.

The government never provides an adequate answer to the question before this Court.  Instead, the government focuses on a red herring argument that Appellate Rule 4 does not apply to Tax Court cases.  Government Br. 25-31.  But amicus never asserted that Appellate Rule 4 governed this appeal.  Rather, amicus showed that it would be most consistent with the spirit of the federal rules and equitable principles if this Court were to permit premature notices of appeal to

ripen from Tax Court decisions under Appellate Rule 13 just as courts did under the analogous Appellate Rule 4 before it was amended to expressly provide for this circumstance. *See* Amicus Br. 21-27. The same principles apply in both contexts. The potential prejudice of foreclosing a pro se petitioner's appeal from ripening far outweighs any potential prejudice from allowing it to go forward given that the government was on notice that petitioner wanted to appeal. *See id*. at 21-40.

Allowing Ms. Duma to proceed on the merits could make a real difference. In arguing to the contrary, the government confuses the record. In fact, the record reveals that the Tax Court repeatedly failed to consider whether Ms. Duma's disability provided reasonable cause and thus excused her liability for these substantial additions to tax. The Tax Court never determined whether Ms. Duma's disability constituted reasonable cause for her failure to file and pay under Section 6651(a). Similarly, the Tax Court ignored a clear statutory exception for disabled taxpayers when it imposed the penalty under Section 6654(a) for failure to pay estimated tax. Because the Tax Court never made the proper credibility determination in the first place, there is no credibility determination to which this Court is required to defer. Remand is therefore required to correct the Tax Court's clear errors of law and allow for proper consideration of Ms. Duma's disability as reasonable cause.

2

## ARGUMENT

I. **THE COURT HAS JURISDICTION TO HEAR MS. DUMA'S PRO SE APPEAL, WHICH RIPENED ON ENTRY OF FINAL JUDGMENT.**

### A. The Government Does Not Acknowledge the Jurisdictional Difference Between Premature Notices of Appeal and Late-Filed Notices of Appeal.

The government's brief goes on at great length to establish the noncontroversial point that the timely notice of an appeal is jurisdictional and that courts may not equitably toll the time to appeal notices that are filed too late, *see* Government Br. 20-25, a point that amicus does not dispute. By stopping there, however, the government fails to address the critical difference between this Court's equitable powers when an appellant has filed *too late* and those when an appellant has filed *too early*. The cases on which the government relies all involve situations in which appellants either were construed as filing within the time period allotted, *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (cited at Government Br. 20), or did not file a notice of appeal until after their time to do so had expired, *see, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 206-07 (2007) (cited at Government Br. 20); *see also generally* Government Br. 24-25 (citing cases in which petitioners filed motions to vacate Tax Court decisions after the time to do so had expired).

But courts have long treated premature notices of appeal differently from late-filed notices of appeal. *See* Amicus Br. 26. Thus, none of the government's cited cases answers the question presented to this Court for the first time: Whether

3

a premature notice of appeal under Appellate Rule 13 should be allowed to ripen on entry of judgment, just as such notices were routinely permitted to ripen under the analogous Appellate Rule 4 before it was expressly amended to so provide.

>   **B.    The Government Fails to Address Amicus's Argument that Premature Notices of Appeal Under Rule 13 Should be Permitted to Ripen Just as They Did Under the Analogous Pre-Amendment Appellate Rule 4.**

The government's contention that "*amicus* frames the issues solely as to this Court's jurisdiction to hear taxpayer's June 23, 2010 admitted[ly] premature appeal based on his argument that it 'ripened on entry of the August 13, 2010, decision by virtue of Fed. R. App. P. 4(a)(2)," *see* Government Br. 27, misses the point.  In fact, amicus's brief began from the premise that Appellate Rule 13 – not Appellate Rule 4 – governs notices of appeal from Tax Court decisions.  *See* Amicus Br. 7-8, 17-18, 21-27.   The government's assertion that amicus's argument should be rejected because "amicus . . . does not mention, let alone discuss Rule 14 in the argument section of his brief," *see* Government Br. 29, is even more perplexing.  As amicus noted in its statutory background section, Appellate Rule 14 merely confirms that Appellate Rule 4, along with 13 other appellate rules not at issue here, does not apply to appeals from the Tax Court.  *See* Amicus Br. 6; *see also id.* at Statutory App'x 12 (listing Appellate Rule 14).  Because amicus fully agrees with the government that Appellate Rule 13 is the rule governing notices of appeal from the Tax Court, there was no need for amicus to separately cite Appellate Rule

14 confirming this shared understanding.[1]  The question amicus properly focused on was whether this Court should use its equitable powers to find that premature notices of appeal from Tax Court decisions under Appellate Rule 13 should be treated similarly to premature notices of appeal under pre-amendment Appellate Rule 4.

The government fails to acknowledge, much less address, amicus's argument that the Supreme Court and Circuit Courts – including this Court – routinely treated premature notices of appeal as ripening under Appellate Rule 4 long *before* Appellate Rule 4 was amended to expressly allow for this longstanding practice.  *Compare* Amicus Br. 7-8, 20-25 *with* Government Br. 17-18, 27-29. This practice is highly relevant because the pre-amendment Appellate Rule 4

---

[1] Nothing in Appellate Rule 14 indicates that it was meant to prohibit this Court's equitable discretion to interpret Appellate Rule 13 as broad enough to allow premature notices of appeal to ripen, just as courts construed similar language in Appellate Rule 4 prior to its amendment.  Appellate Rule 14 has always served as a catch-all rule, noting that certain rules, including Appellate Rule 4, do not apply to review of Tax Court decisions.  *See* Fed. R. App. P. 14 (1997) ("All provisions of these rules are applicable to review of a decision of the Tax Court, except that Rules 4-9, Rules 15-20, and Rules 22 and 23 are not applicable."); Fed. R. App. P. 14 (2013) ("All provisions of these rules, except Rules 4-9, 15-20, and 22-23, apply to the review of a Tax Court decision.").  That Appellate Rule 14 *already* stated that Appellate Rule 4 did not apply to Tax Court decisions before Appellate Rule 4 was amended indicates that Appellate Rule 14's language was not intended to reflect any purposeful distinction between post-amendment Appellate Rule 4 and Appellate Rule 13.

language mirrored the current Appellate Rule 13 language.[2]  That courts believed

that the pre-amendment Appellate Rule 4 language supported their equitable power

to allow premature notices of appeal to ripen indicates that the same result should

apply here with respect to prematurely filed notices of appeal under Appellate Rule

13.

　　As laid out in detail in amicus's opening brief, for decades before Appellate

Rule 4 was amended to expressly provide for ripening, courts recognized that it

was *already* in their equitable power to exercise jurisdiction over these appeals.

First, courts held that it would be "entirely contrary to the spirit of the Federal

Rules of Civil Procure" to prevent premature notices of appeal from ripening under

pre-amendment Appellate Rule 4 because the rules are to be "construed 'to secure

---

[2] Appellate Rule 13(a)(1) reads, "(1) Review of a decision of the United States Tax
Court is commenced by filing a notice of appeal with the Tax Court clerk within 90
days after the entry of the Tax Court's decision."  Fed. R. App. 13(a)(1).  Similarly,
before it was amended, Appellate Rule 4 stated in relevant part:

> *Rule 4.  Appeal as of right—When taken.*
>
> 　　*(a)　　Appeals in civil cases.*—In a civil case . . .  in which an appeal
> is permitted by law as of right from a district court to a court of appeals the
> notice of appeal required by Rule 3 shall be filed with the clerk of the district
> court within 30 days of the date of entry of the judgment or order appealed
> from . . . .
>
> 　　*(b) Appeals in criminal cases.*—In a criminal case the notice of appeal
> by a defendants shall be filed in a district court within 10 days after the entry
> of judgment or order appealed from.

Fed. R. App. P. 4 (1978).

the just, speedy, and inexpensive determination of every action.'" *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (quoting Fed. R. Civ. P. 1); *see also Hamilton v. United States*, 140 F.2d 679, 679-80 (D.C. Cir. 1944) (applying the same rationale in the criminal context); *see generally* Amicus Br. 23-24 (listing cases).  Second, courts concluded that premature notices of appeal under pre-amendment Appellate Rule 4 should be allowed to proceed because they did not cause the type of "error, defect, irregularity  or variance [that] affect[s] substantial rights" of the opposing party.  *Lemke v. United States*, 346 U.S. 325, 326 (1953) (quoting Fed. R. Crim. P. 52); *see also, e.g.*, *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 271 (9th Cir. 1965) (applying this rationale in the civil context); *see generally* Amicus Br. 25-26 (listing cases).

Those equitable principles are just as important for litigants before the Tax Court, who may be trying to appeal the imposition of substantial liability under Appellate Rule 13.  With respect to both rationales, the Tax Court Rules contain almost identical language to the Civil and Criminal Rules, guaranteeing just and speedy resolution of cases on the merits and forgiving technical errors that do not affect substantial rights.  *Compare* Tax Court Rules 1(d), 160 *with* Fed. R. Civ. P. 1; Fed. R. Civ. P. 61; Fed. R. Crim. P. 52(a); *see generally* Amicus Br. 24-25, 26. These cases provide ample support for this Court's equitable jurisdiction to interpret Appellate Rule 13's language – which mirrors the language used in pre-

amendment Appellate Rule 4 – to allow for premature notices of appeal to ripen. Thus, the fact that Appellate Rule 13 does not contain the same express provision for ripening as Appellate Rule 4 is no barrier to this Court's pre-existing equitable powers to interpret Appellate Rule 13 to treat premature notices as timely filed as of the date that final judgment is entered.[3]  The government provides no response to this argument at all.  Simply repeating that "Fed. R. App. P. 4 does not apply to appeals from Tax Court decisions," Government Br. 25, is not a response to amicus's argument and does not answer the question before this Court.

### B.    Nor Did the Government Show That Allowing Ms. Duma's Premature Notice Of Appeal to Ripen Is Inconsistent With *FirsTier*'s Reasonableness Test, Particularly In Light Of Her Pro Se Status.

Because it starts from the faulty premise that Appellate Rule 4 does not apply to Tax Court appeals, the government urges this Court to dismiss the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, 498 U.S. 269 (1991), as irrelevant.  *See* Government Br. 35-36. But given that this is the first time this Court is addressing the question of whether premature notices of appeal should be permitted to ripen under Appellate Rule 13, it makes sense to borrow the analogous test from the context of Appellate Rule 4. That test is provided by *FirsTier*, which as amicus argued in its opening brief, fully

---

[3] Amicus addresses a detailed analysis of why the equitable factors favor allowing Ms. Duma's premature notice of appeal to ripen in the next section.  *See infra.* 8-18; *see also* Amicus Br. 24-25, 27, 28-40.

supports allowing Ms. Duma to proceed.  *See* Amicus Br. 27-40.  First, Ms. Duma is precisely the type of unskilled litigant that *FirsTier* emphasized should be protected against dismissal based on technical errors.  Second, contrary to the government's assertions, the Tax Court's determination of liability is a final determination under the Tax Court Rules, leaving only a ministerial computation of amount owed, rather than a clearly interlocutory order from which an appeal cannot ripen.  Third, allowing a premature notice of appeal to go forward – as opposed to a late-filed notice of appeal – does not cause the kind of prejudice that would weigh against relief under *FirsTier.*

### 1)      Ms. Duma Is Precisely The Type of "Unskilled Litigant" Whom *FirsTier* Protects.

Contrary to the government's brief, it has always been this Court's practice, and that of the Supreme Court, to grant pro se litigants like Ms. Duma significant leeway in questions of technical procedure.  In the context of prematurely filed notices of appeal, the Supreme Court has emphasized that "Rule 4(a)(2) was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment."  *FirsTier*, 498

U.S. at 276; *cf. Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 778 (D.C. Cir. 2012), *cert. denied*, 133 S. Ct. 851 (2013).[4]

The government's brief ignores the cases from amicus's opening brief that make clear circuit courts have continued to treat pro se plaintiffs with greater solicitude, *see* Amicus Br. 30-32. The government likewise fails to address this Court's only decision involving a pro se plaintiff in the context of a prematurely filed notice of appeal, in which this Court noted its continued concern with allowing pro se litigants to go forward where they would otherwise be entirely foreclosed from ever being heard on the merits. *See Robinson-Reeder v. Am. Council on Educ.*, 571 F.3d 1333, 1339-40 (D.C. Cir. 2009) (finding that the pro se litigant's premature notice of appeal had not ripened because the district court still had not entered a final decision at the time of appeal, but emphasizing that the litigant would still have future opportunities to bring the claim) (cited at Amicus Br. 30). Nor did the government address amicus's argument that the clear weight of authority in other Circuits supports allowing prematurely filed notices of appeal

---

[4] The Government's argument distinguishing this Court's decision in *Angellino*, Government Br. 34, focuses on the wrong time period. It is true that unlike the pro se litigant in *Angellino*, Ms. Duma received an initial trial on the merits, *see id.*, though as amicus argues *infra*, that trial itself suffered from reversible defects. But the question here is not whether Ms. Duma – a pro se plaintiff – received sufficient instruction from the district court as to how to file her initial suit. Rather, it is whether she received sufficient notice as to how to *appeal* her suit. Although *Angellino* did not address this exact question, its logic that courts should excuse technical errors by uninformed pro se litigants is applicable.

by pro se plaintiffs to ripen, even at times where those Circuits would not allow the same notice to ripen had the plaintiff been represented by counsel. *Compare Together Dev. Corp. v. A Better Choice Ltd.*, 95 F.3d 1158 (9th Cir. 1996) (unpublished table decision) *with In re Jack Raley Constr., Inc.*, 17 F.3d 291, 294 (9th Cir. 1994); *see generally* Amicus Br. 20-32 (citing cases).

The cases that the government did raise, *see* Government Br. 32-34, do not call into question this longstanding practice. Three of the cases arose in contexts in which the court was without equitable power to toll the time to file a notice of appeal because it was filed *after* the time to appeal had expired. *See Williams v. Washington Convention Ctr. Auth.*, 481 F.3d 856, 858 (D.C. Cir. 2007) (pro se petitioner filed notice of appeal after the period by which a district court may extend on showing of good cause); *Geboy v. Brigano*, 489 F.3d 752, 766 (6th Cir. 2007) (pro se petitioner filed cross-claim nearly two months after the filing deadline without explanation); *Cordle v. Guarino*, 428 F.3d 46, 49 (1st Cir. 2005) (pro se prisoner filed her motion for a new trial over eight years after her conviction). As previously discussed, late-filed notices of appeal result in prejudicial surprise to the opposing party and can raise jurisdictional questions that do not arise in the context of premature notices of appeal. *See supra* 2, 6-7; *see also* Amicus Br. 26 (citing cases). Thus, these three cases are irrelevant. The last case the government cites is even more inapposite. In that out-of-circuit case, the

11

Eleventh Circuit expressly took the petitioner's pro se status into consideration, but found on the particular facts presented in that case that the content of the petitioner's filing was insufficient. *See Taylor v. Comm'r*, 771 F.2d 478, 479-80 (11th Cir. 1985). Here, the fact that Ms. Duma is a pro se litigant is one factor that weighs strongly in favor of allowing the appeal to proceed, particularly in light of the other two *FirsTier* factors.

The government's assertion that Ms. Duma suffered no prejudice is contrary to the record. It is undisputed that Ms. Duma did not receive any notice of the Tax Court's order that her notice of appeal was premature because the post office returned the letter as undeliverable to the Tax Court. *See* J.A. 159; *see also* Amicus Br. 14-15 & n.3.[5] The government's assertion that Ms. Duma could not have been prejudiced because she technically "had the opportunity to file a timely notice of appeal" after the Tax Court entered judgment after the computation on August 13, 2010, *see* Government Br. 32, misses the mark. The prejudice arises

---

[5] Contrary to the government's assertion, *see* Government Br. 32 n.12, the record does, in fact, reveal that Ms. Duma claimed that she never received the order because it was "returned because the post office claimed non-payment," *see* J.A. 163. The government's contention that there could be no prejudice because it was Ms. Duma's fault for being unable to keep up with her payments, *see* Government Br. 32, is particularly surprising given that the trial had been previously delayed while Ms. Duma filed a personal bankruptcy claim while in foreclosure, *see* J.A. 1-2 (docket entries noting stay for pending bankruptcy proceedings), *id.* at 8-9 (status report from Ms. Duma explaining that she was in foreclosure). At any rate, the prejudice here arises from the undisputed fact that Ms. Duma did not receive notice of the Court's instruction that her notice of appeal was too early.

from the fact that Ms. Duma was lulled into letting her appeal period elapse precisely because she mistakenly but reasonably believed that she had *already* filed a sufficient notice of appeal. Holding her at fault for not intuiting advice she never received from the Tax Court would be contrary to this Court's longstanding solicitude for pro se litigants.

> 2) **The Decision At Issue Here Is Not The Type Of Interlocutory Order Contemplated By *FirsTier* Because The Tax Court's Determination of Liability Functions As The Operative Decision And Leaves Only A Ministerial Computation Before Entry Of Judgment.**

As discussed in the opening brief, the Tax Court's initial decision is not the kind of clearly interlocutory order that prevents ripening under the *FirsTier* factors. The government again takes great pains to prove a point on which the parties agree – that the Tax Court's initial opinion regarding liability is not technically a final "decision." *See* Government Br. 30-31. But that point ignores amicus's argument that the Tax Court's initial opinion functionally operates as a final decision as to liability, which cannot, as a matter of law, be reopened during the computational stage. Indeed, the government's discussion of Tax Court Rule 155 does not even address the fact that Rule 155(c) expressly forecloses any reopening of the liability determination during the computational stage even where the parties disagree as to the calculation of the amount owed. *See* Tax Court Rule 155(c) ("[N]o argument will be heard upon or consideration given to the issues or matters disposed of by

the Court's findings and conclusions or to any new issues") (cited at Amicus Br. 6, 35); *see also* Jose Leiman, *Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. 165, 165 (1995) ("Generally, Rule 155 computations are limited to mathematical calculations consistent with the court's findings of fact and legal conclusions."). Nor does Tax Court Rule 155 allow for new issues to be litigated during the computational stage. *See, e.g.*, *Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. at 193 ("In general, the only items not considered during the Tax Court proceedings that will be allowed during the Rule 155 computation will be those adjustments that are purely computational."). Thus, the structure of Tax Court Rule 155 renders the initial opinion the one that conclusively determines the taxpayer's liability on the merits, which provides a reasonable (though mistaken) basis for litigants to believe that they can file a notice of appeal as soon as the initial determination is made. *Cf. FirsTier*, 498 U.S. at 276.

Where, as here, the petitioner is not challenging which computations apply once the liability determination has been made, Tax Court Rule 155(a) provides that either of the parties may provide the computation and the "Court will then enter its decision." Tax Court Rule 155(a); *see also Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. at 165 ("If the Service and the taxpayer agree on the amount of the deficiency . . . resulting from the court's

14

opinion, then the decision of the court can be entered as a routine matter under Rule 155."). In these circumstances, the computation is purely ministerial. Particularly because the government does not dispute that this was the procedure followed in this case, *see* Government Br. 31, *FirsTier* does not provide any reason the appeal should not be allowed to go forward.

As amicus argued in the opening brief, the ministerial nature of the computation at issue here distinguishes this type of proceeding from the two types of "clearly interlocutory" decisions (discovery rulings and Rule 11 sanctions) set aside as exceptions in *FirsTier*, 498 U.S. at 276, and even from the more substantive costs and damages determinations discussed in this Court's two unpublished decisions in *Flynn v. Ohio Building Restoration, Inc.*, 162 F. App'x 3, 3-4 (D.C. Cir. 2005), and *Holland v. Williams Mountain Coal Co.*, No. 04-7092, 2004 WL 2713122, at *1 (D.C. Cir. Nov. 23, 2004) (per curiam).[6] *See also* Amicus Br. 37-38 (citing cases from three other circuits disagreeing with this Court and finding that so long as the district court entered a judgment fixing damages during the pendency of the appeal, ripening was permitted).

Nor should the fact that Tax Court computation decisions *sometimes* lead to appeals, *see* Government Br. 37, alter the general rule that these computations are ministerial in nature. That an initial decision might leave some substantive topics

---

[6] To the extent that these two unpublished decisions go beyond the examples provided in *FirsTier*, they are not binding precedent. *See* D.C. Cir. R. 36(e)(2).

15

open has not proved to be an insurmountable barrier to allowing a premature appeal to ripen in other contexts. For example, this Court has held that so long as the district court could have "*hypothetical[ly]*" granted the petitioner's Rule 54(b) motion to certify certain issues for appeal, the premature notice of appeal could ripen on entry of judgment, even though the district court had actually denied the petitioner's Rule 54(b) motion. *See Capital Sprinkler Inspection, Inc. v. Guest Sers., Inc.*, 630 F.3d 217, 222 (D.C. Cir. 2011) (emphasis added). Notably, *Capital Sprinkler* involved a case in which there were multiple other claims relating to liability that still remained pending and could have formed the basis for other appeals. *See id.* There is just as strong a rationale for allowing Ms. Duma's premature notice of appeal to ripen here. The Tax Court hypothetically could have – and indeed did – enter an entirely ministerial computation of the amount due that was automatically calculated under statute based on the liability determination that had already been made.[7]

### 3) Nor Would Permitting Ms. Duma's Notice of Appeal To Ripen Prejudice the Government under *FirsTier*.

The government's argument that it would be prejudiced if Ms. Duma's appeal was to go forward, *see* Government Br. 34-35, mistakes the type of prejudice that courts consider when deciding whether to allow premature notices of

---

[7] To the extent that there are any doubts, it is notable that appeals involving the computation portion of Tax Court decisions are relatively rare. *See Navigating the Treacherous Waters of Tax Court Rule 155*, 49 Tax Law. at 193.

appeal to ripen. As *FirsTier* makes clear, the special type of prejudice with which courts are concerned is whether there is a countervailing harm of "catch[ing] the appellee by surprise." 498 U.S. at 276. The government does not argue that it suffered from this type of prejudice, *see* Government Br. 34-35, nor could it given that Ms. Duma has always made clear that she was trying to challenge the Tax Court's underlying finding of liability, *see generally* Amicus Br. 27, 39-40.

Rather, the government's prejudice claim erroneously focuses on the more general assertion that if certain Tax Court decisions were to turn out not to be final, there might be complications with the collection of that taxpayer's taxes. *See* Government Br. 34-35. This argument ignores the fact that courts have historically permitted premature notices of appeal to ripen in civil and criminal cases even though finality is just as, if not more, important in those contexts. *See, e.g.*, *Lemke*, 346 U.S. at 326 (allowing a premature notice of appeal to ripen in criminal context); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356 (2006) (noting "the law's important interest in the finality of judgments" with respect to criminal convictions); *FirsTier*, 498 U.S. at 277-78 (allowing a premature notice of appeal to ripen in the civil context); *Arizona v. California*, 460 U.S. 605, 644 (1983) (noting that "[c]oncern for finality remains an important policy" in the civil context). The same should hold true here. Because the government has not asserted that it has been caught by surprise by Ms. Duma's appeal, it has not been

17

prejudiced for purposes of this Court's equitable analysis in determining whether the appeal should go forward.

## II.    THE TAX COURT FAILED TO CONSIDER WHETHER MS. DUMA'S DISABILITY EXCUSES HER LIABILITY FOR TAX PENALTIES.

### A.    The Tax Court Never Determined Whether Ms. Duma's Disability Provided Reasonable Cause for Her Failure to Timely File and Pay.

Turning to the merits, the government once again misconstrues amicus's argument and the record.  According to the government, "[*amicus*] argue[s] that the Tax Court erred in determining that [Ms. Duma's] disability did not establish reasonable cause" excusing her failure to pay taxes.  Government Br. 47.  That is not amicus's position.  Instead, amicus argued that the Tax Court erred in failing to determine whether Ms. Duma's disability established reasonable cause.  *See* Amicus Br. 42-48.

In arguing that the Tax Court did make such a determination, the government misunderstands the record.  In fact, the record indicates that the Tax Court never engaged in a credibility determination as to whether Ms. Duma was sufficiently disabled such that she had reasonable cause for her failure to timely pay and file her taxes under Section 6651(a). Rather, the only credibility determination the Tax Court made was as to the different question of whether Ms. Duma had *actually* filed her 2003 and 2004 returns.  On this question, the Tax

18

Court determined that her disability likely prevented her from filing her tax returns contrary to her testimony that she had been able to file them. *See* J.A. 146 ("*Given Ms. Duma's condition*, this elaborate effort [to file her returns for 2003 and 2004] is unlikely.") (emphasis added). The fact that Ms. Duma's disability appears to have played a major role in persuading the court that she did not actually file her returns makes it all the more distressing that the Tax Court failed to consider whether her disability constituted reasonable cause excusing her "failure . . . to pay the amount shown as tax on any return," *see* 26 U.S.C. § 6651(a). Thus, despite government's claims, remand is necessary to allow for the Tax Court to make a credibility determination on the issue of disability as reasonable cause.

The government argues that in considering the penalties imposed under Section 6651(a), "[t]he Tax Court considered taxpayer's disability, and, through its questioning, gave her the opportunity to establish the severity of her impairment. Ultimately, however, the Tax Court found that her testimony . . . was not credible, and, that her disability was not so severe as to constitute reasonable cause." Government Br. 48. But the Tax Court did not make this determination as to Ms. Duma's disability. Rather, the Tax Court's conclusions that Ms. Duma's testimony was "uncorroborated" and "problematic" came strictly in its discussion of whether or not she filed her returns, *not* whether her disability excused filing. *See, e.g.,* J.A. 145 ("[H]er uncorroborated testimony *that she filed returns* was not

19

persuasive") (emphasis added); J.A. 145-46 ("She testified that she mailed her 2003 and 2004 returns in [this] fashion. Ms. Duma's testimony is problematic"). As discussed in amicus's opening brief, the Court pointedly did not ask any follow-up questions during the discussion of the penalties that would have led to testimony on which it could have based a credibility determination as to whether Ms. Duma's disabilities provided good cause for her failure. *See* Amicus Br. 46 (citing J.A. 90-91). While the Tax Court's credibility determinations are, as the government correctly notes, "entitled to the greatest deference," Government Br. 48, no deference is due to a credibility determination that never occurred. Since the Tax Court never decided whether Ms. Duma's disability was serious enough to constitute reasonable cause, this Court should remand to allow the Tax Court to make this credibility determination.

If anything, the Tax Court's conclusion as to whether or not Ms. Duma filed her returns actually suggests that given the opportunity on remand, the Tax Court would find Ms. Duma's claims of disability a compelling excuse for her failure to file and pay. Finding Ms. Duma's lengthy account of her filing not credible, the Tax Court reasoned that "[g]iven Ms. Duma's condition, this elaborate effort is unlikely." J.A. 146. This analysis suggests that Ms. Duma's claims of disability persuaded the court that she lacked the physical strength to file. Rather than rejecting Ms. Duma's allegations as to her physical condition as unconvincing – as

20

the government argues – the court actually relied on them in concluding that Ms. Duma's physical condition cast doubt on her ability to submit her returns as she claimed. *See also* J.A. 145 (finding that "[a]t some point in the years in issue, she became disabled."). Such reliance makes the Tax Court's later statement that "Ms. Duma does not allege any 'reasonable cause' excuse, and we find here no circumstances that would constitute reasonable cause" all the more puzzling. J.A. 147. The Tax Court's failure to explicitly consider Ms. Duma's disability as a potential reasonable cause excusing her failure to pay her taxes constitutes a clear error of law requiring remand.

### B.     The Tax Court Misstated the Applicable Law in Penalizing Ms. Duma for Her Failure to Pay Estimated Tax.

The Tax Court similarly took a legally erroneous view of Section 6654 when it penalized Ms. Duma for her failure to pay estimated tax. Section 6654(e)(3)(B) contains a clear exception from the estimated tax penalty when the taxpayer "became disabled, in the taxable year for which estimated payments were required to be made or in the taxable year preceding such taxable year" and "such underpayment was due to reasonable cause and not to willful neglect." 26 U.S.C. § 6654(e)(3)(B). Yet, in considering Ms. Duma's case, the Tax Court failed to even mention this exception, in spite of its clear relevance to her case. J.A. 151.

The government's attempts to explain the Tax Court's legal error are unpersuasive. First, the government claims that "having determined that

21

taxpayer's circumstances did not excuse her failure timely to file and pay . . . there was no need for the Tax Court to revisit the matter." Government Br. 51. Yet, as noted above, the Tax Court never determined whether taxpayer's disability excused her failure timely to file and pay under Section 6651. The government can hardly rely on a determination that was never made as to Section 6651 to excuse the Tax Court's legal error with respect to Section 6654. Moreover, in previous cases, including the case cited by the government on this point, the Tax Court has made explicit the sort of reliance on a previous conclusion that the government posits implicitly happened here. *See, e.g. McLaine v. Comm'r*, 138 T.C. 10, 14 (2012) ("For the reasons given for rejecting those arguments as they related to respondent's additions to tax under that provision [Section 6651(a)], we reject them as [a] justification for reversing respondent's imposition of the addition to tax under section 6654(a)."). Here, by contrast, the Tax Court made no reference to its discussion of Section 6651(a). J.A. 151.

Second, the government argues that the Tax Court did not misstate the law when it noted "[r]easonable cause is not an excuse for underpayment of estimated tax." *Id.* According to the government, "the language of the statute and the case law clearly establish that there is no general reasonable-cause exception to the estimated tax addition." Government Br. 51. Although it is true that "there is no *broadly applicable* reasonable-cause exception to the section 6654 addition to tax,"

22

Government Br. 49, this is not what the Tax Court said. Rather, the Tax Court omitted the crucial qualifiers about disability that both the government and previous cases have been careful to employ. J.A. 151. Indeed, the cases cited by the government show that in previous instances the Tax Court has always been careful to moderate any statement discussing reasonable cause as an exception to the Section 6654 penalty with references to disability. *See, e.g., Mendes v. Comm'r*, 121 T.C. 308, 323 (2003) ("[S]ection 6654 provides no exception for reasonable cause" "[e]xcept in very limited circumstances not applicable to this case, *see* sec. 6654(e)(3)(B)"); *Adams v. Comm'r*, 105 T.C.M. (CCH) 1029, 2013 WL 135103, at \*16 (2013) (considering application of the exception for disabled taxpayers with reasonable cause); *see also Cahill v. Comm'r*, 102 T.C.M. (CCH) 187, 2011 WL 3625106, at \*5 (2011) (noting that while "no general reasonable cause exception exists for the section 6654(a)" penalty, the statute contains an exception for disabled taxpayers with reasonable cause). Yet here, the Tax Court failed to make any qualification of its statement. Rather than stating that there was "no *general* reasonable cause exception" the Tax Court simply stated that there was "no exception." J.A. 151. The government's *post hoc* attempt to add the proper qualification to this misstatement of law is unavailing. The Tax Court's failure to qualify its sweeping, erroneous statement and consider a clearly relevant exception is exactly the sort of legal error that requires remand.

23

Finally, perhaps conceding the Tax Court's legal error, the government claims that "[i]n any event, taxpayer did not establish that she had a disability for purposes of a statutory exception under § 6654(e)(3)(B)."  Government Br. 51. Yet, as previously noted, in past cases the Tax Court has found petitioners who suffer from similar chronic debilitating illnesses sufficiently disabled to qualify for this exception.  *See, e.g., Meyer v. Comm'r*, 85 T.C.M. (CCH) 760, 2003 WL 118258, at *5 (2003).  Thus, despite the government's claims, the Tax Court's error in not considering this exception is hardly harmless.  This Court should correct the Tax Court's legal error and provide Ms. Duma the opportunity to present evidence on this wrongly disregarded exception.

## CONCLUSION

For the foregoing reasons, the Court should take jurisdiction of this appeal, vacate the order setting the amount of Ms. Duma's tax liabilities, and remand to the Tax Court for a determination as to whether Ms. Duma had reasonable cause for failing to file her tax returns and pay her taxes on time in 2003 and 2004 and for failing to pay her estimated tax in 2004 because of her serious disabilities.

24

Respectfully submitted,


 /s/ David W. DeBruin
David W. DeBruin
Jessica Ring Amunson
Caroline D. Lopez
Rochelle P. Lundy
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC  20001
(202) 639-6000
ddebruin@jenner.com
jamunson@jenner.com
clopez@jenner.com
rlundy@jenner.com

25

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 1st day of March, 2013, in accordance with Circuit Rule 25(c), I caused the foregoing reply brief to be filed with this Court's ECF system.  I have also caused a copy of this brief via certified mail to the address listed on the court docket for Ms. Duma:

Khadija Duma
PO Box 13414
Silver Spring, MD 20911
Phone: 202-546-6281


  /s/ David W. DeBruin

## CERTIFICATE OF COMPLIANCE

I, David W. DeBruin, in reliance on the word count of the word processing system used to prepare this brief, certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e).  The brief contains 6,222 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point font.

Dated:  March 1, 2013                               /s/  David W. DeBruin